IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 28, 2016 Session

**STATE OF TENNESSEE v. MOHNIKA M. KING**

**Appeal from the Criminal Court for Knox County**
**No. 104085   Steven Wayne Sword, Judge**

_____

**No. E2015-01802-CCA-R3-CD – Filed August 16, 2016**

_____

Mohnika M. King ("the Defendant") pleaded guilty to one count of theft of property valued at $10,000 or more but less than $60,000 and one count of forgery. During the sentencing hearing, the trial court denied the Defendant's request that she be placed on judicial diversion. On appeal, the Defendant contends that the trial court abused its discretion when it denied judicial diversion. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Ursula Bailey, Knoxville, Tennessee, for the appellant, Mohnika King.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin Ball, Senior Counsel; Charme Allen, District Attorney General; and William Bright, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual and Procedural Background**

The Defendant was indicted with two counts of theft of property valued at $10,000 or more but less than $60,000, and two counts of forgery. The Defendant pleaded guilty to one count of theft of property valued at $10,000 or more but less than $60,000 and one count of forgery. The parties agreed to a four-year sentence as a Range I offender with the manner of service to be determined by the trial court. The remaining counts of the indictment were dismissed.

At the sentencing hearing, Amy Williams testified that she was the branch operations manager at Home Federal Bank. The Defendant worked at Home Federal Bank's Cedar Bluff location as a customer service representative ("CSR"). Ms. Williams stated that customer service was a high priority at Home Federal Bank, and in order to provide quality customer service, CSRs are given more access to accounts and customer information than bank tellers. Ms. Williams noted that William Webb and Mary Lou Parks were siblings and customers of Home Federal Bank. At the time of the offenses, Mr. Webb was eighty-three years old, and Ms. Parks was seventy-eight. Mr. Webb and Ms. Parks questioned some transactions on their statement and brought it to the bank's attention. Ms. Williams reviewed the bank's account records, and her investigation revealed that the Defendant made twenty-eight separate withdrawals, ranging from $100 to $2,000, from Mr. Webb's and Ms. Parks's bank accounts between October 23, 2012, and October 15, 2013. In total, the Defendant withdrew $16,254 from the accounts. Ms. Williams reported that the Defendant paid extra attention to and befriended Mr. Webb and Ms. Parks. Ms. Williams said the victims described themselves as "devastated"; Ms. Parks particularly "had difficulty understanding how something like this could happen with someone that she trusted."

Ms. Williams stated that the Defendant worked at Home Federal Bank for seven years before she resigned. At the time of her resignation, she had been placed on administrative leave for violating a bank policy by cashing third-party checks. After her employment was terminated, the Defendant received a check from her 401(k) and pension in the amount of $19,313.33. Home Federal Bank reimbursed Mr. Webb and Ms. Parks for the money taken from their accounts. However, the Defendant had not made any restitution payments to the bank at the time of the sentencing hearing.

The Defendant provided the following statement for her presentence report:

My offense is theft/forgery of a customer at Home Federal Bank. When I was approached by my HR manager (Evelyn Faller) about deposits that were being made by a customer (Service Master) by an individual (Elena) initially that was all she questioned me about. By this time I had already resigned as CSRII. Maybe a week went by [and] she asked if I could come in because she had more questions about Service[ ]Master. I came back in (on my own terms even though I had no more ties to Home Federal Bank). That is when the questions about the withdrawals from Mr. William Webb's account came up. She asked me did I have any knowledge of them. I told her I had to look at what was in question and then I could talk to her more in detail. It took about [two] more days for her to call me back. I came back in, she gave me a total[,] and I told her I was aware of those withdrawals. After a week[']s worth of discussion I told her that I found a job and I would pay back the funds. Her [sic] and I agreed on a payment

arrangement but I lost my job due to it being [through] a staffing agency. It was only contracted for [six] months. I tried finding a job and when I found one, it was too late, [Home Federal] had me arrested. After my arrest, I made bond and tried finding a job anywhere that would hire me. Thank the Lord I found Ra[n]dstad. They found me placement here at Braxton-Bragg. I enjoy my job. It is what I needed to get back on my feet. I have no other bills besides my phone bill. This job will help me pay off Home Federal Bank as I promised I would do from the beginning. Again I have [first] asked for forgiveness from the Lord, secondly I asked for forgiveness from Home Federal. I just want to continue to work and pay off my mistake. I take full responsibility for my actions.

The presentence report also noted that the victims were particularly affected by the Defendant's actions, stating:

[Ms. Parks], normally outgoing and happy, has become very distrusting and distressed. She is in constant fear that someone will take her money. She even fears that the courts will take the funds reimbursed from this embezzlement. She will not use those funds. She continues to question the reason this occurred and will only allow one employee to take care of her banking needs.

According to the presentence report, the Defendant had no criminal history. She reported good mental and physical health, but she noted that she had been diagnosed with clinical depression after the death of her mother in 2008. She also stated that "she suffers from anxiety and sleep deprivation, which stemmed from '[four] tragedies in my family as well as this situation with my previous employer, Home Federal Bank.'" The Defendant provided a pharmacy printout stating she took alprazolam, zolpidem tartrate, and oxycodone-acetaminophen. The presentence report noted that the only physical problem the Defendant reported was asthma, for which she used an inhaler. The Defendant did not report any health conditions for which oxycodone-acetaminophen was prescribed. The Defendant denied using any illegal or non-prescribed drugs.

The Defendant also addressed the court directly and said:

I just want to say that I—that I am remorseful, and I didn't have a chance to speak to the customers individually, but I did—I am—I am remorseful. I worked for Home Federal for a long time. I admit it. I made a mistake, and I—I want to pay the money back and, you know, do what's right.

The trial court noted that the Defendant was eligible for judicial diversion. The trial court acknowledged the Defendant's statement in court expressing remorse for her

actions.  However, the trial court also stated that the Defendant's statement in her presentence report "ma[de] it sound like that . . . she's doing Home Federal a favor by coming in to speak with them.  To me, that evinces a poor attitude."  The trial court also referenced the Defendant's statement that she would have to look at the accounts in question in order to answer Home Federal Bank's questions, stating, "[S]he knew what she was talking about.  If [the Defendant] was really remorseful for what she had done and wanted to make—make right on this stuff, she wouldn't have made them jump through all these hoops[.]"  The trial court also questioned why the Defendant did not reimburse the bank from the $19,313.33 check she received from her 401(k) and pension if she truly was remorseful.  The trial court also stated that the Defendant's comment that she was trying to find a job before "Home Federal had [her] arrested" made it appear as if the Defendant blamed Home Federal for her own failure to pay restitution.  Overall, the trial court found that the Defendant was not remorseful and was not amenable to correction.

As to the circumstances of the offense, the trial court stated that the fact this was a property crime weighed in favor of the Defendant.  However, the trial court stated that the Defendant was in a position of professional trust and that the offense was not "a one-time slip up[.]"  Instead, she specifically targeted two elderly individuals.  The trial court held that the abuse of a position of trust weighed against granting diversion.

The trial court concluded that the Defendant's lack of criminal history and good social history weighed in favor of granting diversion.  The trial court also stated that it did not see anything in the Defendant's medical history that would indicate she could not complete diversion.

The trial court found that deterrence value to the Defendant and others weighed against granting judicial diversion because granting judicial diversion would send a signal that people could steal and the only consequence would be that they would have to repay the money.  The trial court also held that granting judicial diversion would not serve the interest of justice for the public, Home Federal Bank, or the Defendant.  The trial court denied the Defendant's request for judicial diversion.  The trial court imposed the agreed-to four-year sentence and suspended the sentence to six years' probation, with fifteen days to be served in confinement.  The trial court also ordered the Defendant to pay $250 per month toward her restitution.

## II. Analysis

On appeal, the Defendant argues that the trial court abused its discretion in denying judicial diversion.  Specifically, the Defendant complains that, although the trial court addressed all the relevant factors, it "did not explain the weight [it] gave to certain factors."  The Defendant contends that the trial court placed too much weight on the

Defendant's lack of remorse and "only gave cursory consideration to the factors that weighed in favor of [the Defendant]." The State argues that the trial court did not abuse its discretion in denying judicial diversion. We agree with the State.

As a preliminary matter, we note that the transcript of the Defendant's guilty plea is not included in the record on appeal. However, because the transcript of the sentencing hearing contains the facts of the case and the trial court appears to have based its decision regarding diversion solely on the evidence presented during the sentencing hearing, the record is sufficient for this court to conduct a meaningful review. See State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012). We presume "that the missing transcript would support the ruling of the trial court." Id.

Tennessee Code Annotated section 40-35-313 governs judicial diversion. Upon a finding of guilt, the trial court may defer further proceedings and place a qualified defendant on probation without entering a judgment of conviction. Tenn. Code Ann. § 40-35-313(a)(1)(A) (Supp. 2015). Once the defendant successfully completes probation, the charge will be dismissed. Tenn. Code Ann. § 40-35-313(a)(2) (Supp. 2015). The statute defines a "qualified defendant" as a defendant who:

> (a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;
>
> (b) Is not seeking deferral of further proceedings for any offense committed by any elected or appointed person in the executive, legislative or judicial branch of the state or any political subdivision of the state, which offense was committed in the person's official capacity or involved in the duties of the person's office;
>
> (c) Is not seeking deferral of further proceedings for a sexual offense, a violation of § 71-6-117 or § 71-6-119, driving under the influence of an intoxicant as prohibited by § 55-10-401, or a Class A or B felony;
>
> (d) Has not previously been convicted of a felony or a Class A misdemeanor for which a sentence of confinement is served; and
>
> (e) Has not previously been granted judicial diversion under this chapter or pretrial diversion.

Tenn. Code Ann. § 40-35-313(a)(1)(B)(i) (Supp. 2015).

However, eligibility under the statute does not entitle a defendant to judicial diversion; instead, the decision whether to grant judicial diversion is left to the trial court's discretion. State v. King, 432 S.W.3d 316, 323 (Tenn. 2014). The defendant

- 5 -

bears the burden of proving that he or she is a suitable candidate for judicial diversion. State v. Faith Renea Irwin Gibson, No. E2007-01990-CCA-R3-CD, 2009 WL 1034770, at *4 (Tenn. Crim. App. Apr. 17, 2009) (citing State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999); State v. Baxter, 868 S.W.2d 679, 681 (Tenn. Crim. App. 1993)).

When determining whether to grant judicial diversion to a qualified defendant, the trial court must consider the following factors:

> (a) the accused's amenability to correction; (b) the circumstances of the offense; (c) the accused's criminal record; (d) the accused's social history; (e) the accused's physical and mental health; (f) the deterrence value to the accused as well as others; and (g) whether judicial diversion will serve the interests of the public as well as the accused.

State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). In addition to the Parker and Electroplating factors, the trial court may consider the following factors in making its decision: "[the defendant's] attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility[,] and attitude of law enforcement." State v. Anthony Adinolfi, No. E2013-01286-CCA-R3-CD, 2014 WL 2532335, at *2 (Tenn. Crim. App. June 2, 2014) (quoting State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993)) (internal quotation marks omitted). The record must reflect that the trial court weighed all the Parker and Electroplating factors against each other, and the trial court must give an explanation of its ruling on the record. King, 432 S.W.3d at 326; Electroplating, 990 S.W.2d at 229.

We review a trial court's decision regarding judicial diversion under the same standard set forth in State v. Bise, 380 S.W.3d 682 (Tenn. 2012). King, 432 S.W.3d at 324. Applying the Bise standard to judicial diversion decisions, if the trial court considers the Parker and Electroplating factors, specifically identifies the relevant factors, and places on the record its reasoning for granting or denying judicial diversion, then "the appellate court must apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." Id. at 327. The trial court need not recite all of the Parker and Electroplating factors when justifying its decision on the record in order to be granted a presumption of reasonableness. Id. However, the record should reflect that the trial court considered the factors when rendering its decision and that it identified the relevant factors applicable to the case. Id. Once the trial court identifies the relevant factors, it may proceed solely on those. Id.

In this case, the record shows that the trial court considered and weighed all the Parker and Electroplating factors. The Defendant appears to assert in her brief that the sole consideration weighing against granting judicial diversion was the Defendant's failure to express remorse. However, the record clearly reflects that the trial court found that the Defendant's amenability to correction, the circumstances of the offense, and the deterrent value to the Defendant and others weighed against granting judicial diversion. The Defendant's statement in the presentence report demonstrated that she was not entirely forthcoming with Home Federal Bank once the withdrawals from Mr. Webb's and Ms. Parks's accounts were discovered; instead, she waited until she was specifically asked about the withdrawals and confronted with the evidence before she admitted to her wrongdoing. Further, the Defendant had not made any payment toward restitution at the time of the sentencing hearing. Lack of candor or remorse and failure to pay restitution is evidence of a defendant's lack of amenability to correction. See State v. Timothy C. Hutson, No. M1999-00329-CCA-R3-CD, 2000 WL 1246429, at *8 (Tenn. Crim. App. Aug. 18, 2000) (examining factors considered in prosecutor's denial of pretrial diversion). Finally, the circumstances of the offense show that the Defendant abused the trust of two elderly bank customers with whom she had formed a close relationship and even befriended. There is substantial evidence in the record to support the trial court's denial of judicial diversion.

In her brief, the Defendant cites to webpages of three articles from the local Knoxville news media, featuring stories of public officials who were granted judicial diversion. The Defendant argues that her abuse of trust was no more egregious than that of the public officials who were granted diversion, and she appears to assert that her race and gender were part of the reason that she was treated more harshly than those officials. However, those news articles were not presented to the trial court and are not included in the record on appeal. Therefore, we will not consider them on appeal. Tenn. R. App. P. 13(c). To the extent that the Defendant argues that her race or gender influenced her sentence, that argument was not presented to the trial court, and there is absolutely no indication in the record that the trial court considered the Defendant's race or gender at any point during the proceedings.

### III. Conclusion

The Defendant has failed to establish that the trial court abused its discretion when it denied her request for judicial diversion. The judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

- 7 -